# KINNEY v. M'CULLOUGH.

H. and M. being partners in trade, and owners in common of two lots, each subject to a recorded mortgage, and both incumbered by a subsequent unrecorded mortgage, given by them to P., to secure their bond for a partnership debt; dissolved their partnership. M. took all the assets of the firm, and agreed to pay all the debts, including the bond and mortgage to P.; and M. conveyed to H., for a full price paid, his moiety of the two lots, subject only to the recorded mortgage on each, with covenants of quiet enjoyment, warranty, and against all incumbrances save those two mortgages. Afterwards, H. borrowed money of K., and secured him by bond and mortgage on the two lots; K. having no notice of P.'s mortgage, which, in the mean time, had been recorded. K.'s mortgage was subsequently foreclosed against H., and K. became vested with the title under the decree, leaving a large deficiency due to him on his mortgage. M. then procured the holder of the first mortgage on one of the lots, to foreclose the same. K. and P. were made parties, the lot was sold, and K.'s title divested. There was a surplus paid into court on the sale, exceeding the sum remaining due to K. Both K. and P. claimed it, and it was adjudged and paid to P. as the holder of the eldest recorded mortgage.

K. then filed a bill against M. to compel him to pay all or part of the sum due on H.'s mortgage to K.

A demurrer to the bill, for want of equity, was overruled.

On the dissolution between H. and M., the agreement of M. as to the debts, and his deed to H.; M. became the principal debtor to P., and the lots, as well as H., were his sureties.

The agreement as to the debts was valid, even if made by parol.

By the mortgage of H. to K., the latter became entitled, as mortgagee, to the equity which H. had in respect of the lots, to compel M. to pay off P.'s mortgage; and upon his purchase at the sale under his foreclosure, K. became absolutely entitled to the benefit of that equity.

Although it was not a covenant running with the land, this equity attached itself to the land, and passed with the title to K.

On the surplus being taken from K. by P.'s mortgage, it was, in effect, a payment by K. of M.'s debt, and K. is entitled to recover it from M.

This right is a mere equity, not cognizable at law.

As to half the surplus. K. is entitled to recover it by virtue of the covenants in M.'s deed to H., which run with the land and vested in K. There was no such eviction of K., by means of P.'s mortgage, as would enable him to maintain an action at law upon the covenants. But it operated as an equitable eviction of K. as to the surplus money, which entitled him to a decree upon the covenants in the deed.

It was held that H. was not a necessary party to the suit.

March 22; March 29, 1844.

THIS case was heard on a general demurrer to the bill for want of equity.

The bill stated that on the 31st of May, 1838, Samuel F. Halsey and the defendant, James M'Cullough, being seised in fee as tenants in common of the stores and lots 51 and 53 Front-street, New-York, M'Cullough sold his moiety to Halsey for $13,653 57, (which price Halsey paid before he received a conveyance,) subject to two mortgages, executed by them, one upon 53 Front-street, to H. W. Field, executor, &c. on which was due June 1, 1838, $15,296 19, and the other upon 51 Front-street to David Wood, on which was due at that date $17,396 66. The sale was not made subject to any other incumbrance, and the price paid with the half of the two mortgages, made the consideration for the moiety $30,000, which was its full and fair value at that time. A conveyance thereof was executed by M'Cullough, and wife to Halsey, on the 31st of May, 1838. This deed is set out *verbatim.* The consideration expressed, is $13,653 57 ; it is subject to the two mortgages, the amount of which is stated as above, and it declares that the aggregate amount of the two mortgages with interest, is assumed, and to be paid by Halsey, and his legal representatives. The deed contained on the part of M'Cullough the usual covenants of seisin, good right to convey, of quiet enjoyment and warranty, and that the premises conveyed were free from all incumbrances, except the two mortgages. It was recorded on the 9th day of June, 1838.

The bill farther charged, that on the 19th of August, 1839, Halsey applied to the complainant for a loan of money, and as security therefor, proposed to give his bond and a mortgage on the two stores and lots which he represented were not incumbered except by the mortgages to Field and Wood, and in corroboration of his statement, exhibited to and left with the complainant, M'Cullough's deed. Believing the representation to be true, the complainant thereupon loaned $1000 to Halsey, and procured a loan to him of $3000 more which John L. Flake had left with the complainant to loan at his discretion. To secure the payment of those loans, Halsey deposited with the complainant M'Cullough's deed, and the other title deeds of the

premises, and executed his two bonds, one to Flake for $3000, and one to the complainant for $1000, payable in a year with interest semi-annually; and Halsey and his wife executed to each, a mortgage with like condition, on the two stores and lots. These mortgages were recorded August 23, 1839, Flake's being recorded first, so as to give it priority. At the time of making these loans, and taking and recording the mortgages, Flake and the complainant believed there was no other lien on the premises, except the two mortgages to Field and Wood.

On the 2d of November, 1840, the complainant filed a bill in this court against Halsey and wife and Flake, to foreclose his mortgage, conceding the priority to Flake's mortgage. The usual decree of sale was made on the 25th of January, 1841. It directed Flake's debt and costs to be paid first out of the proceeds, and then those of the complainant. The premises were sold under the decree of the 3d of March, 1841, and were purchased by the complainant for $1000. M'Cullough was present at the sale. The complainant paid his bid, and on the 29th of April, 1841, received a Master's deed. On the 20th of April, he had paid to Flake $3,243, the amount due to him as found by the decree, and taken an assignment of Flake's bond and mortgage and his rights under the decree. The Master's report of sale, which was duly confirmed, stated the deficiency due to the complainant to be $1,151 98, and that $980 77 had been paid from the sale towards Flake's debt. Halsey became insolvent before the decree was made, and so continues.

The bill then sets forth, that previous to May 31, 1838, Halsey & M'Cullough had been partners in trade, and on that day dissolved their partnership by an agreement by which M'Cullough was to have the good will of their business, continue the same, take all the partnership property and effects, and assume and pay the partnership debts. Accordingly, M'Cullough received the effects of the firm, and still continues the business.

On the 10th of July, 1837, the partnership of H. & M. became indebted to Francis Philippon in $5,000, for money lent and lead sold to the firm, and to secure him therefor, in case of any unexpected disaster, H. & M. gave P. their joint

Kinney v. M'Cullough.

and several bond, and with their wives executed to him a mortgage upon the two stores and lots, conditioned to pay the 5,000 in one year with interest. It was agreed between the parties, that the mortgage should not be recorded, unless by losses of the firm the payment of the debt to P. should become doubtful without resort to the mortgage. No such losses were ever sustained by the firm. This mortgage was not recorded when M'Cullough sold to Halsey, and it was then agreed between them, that M'Cullough should pay the debt to Philippon, and that the stores and lots should not be charged with it. Halsey, relying upon this agreement, paid to M'Cullough the full value of the same, as before stated.

Pursuant to the agreement, M'Cullough paid the interest to Philippon up to July 10, 1840 ; but he caused or procured Philippon's mortgage to be recorded on the 20th of February, 1839, without Halsey's consent, approbation or knowledge, with the intent to defraud Halsey and those to whom he might sell or mortgage, by throwing P.'s debt upon the stores and lots.

Halsey was ignorant of this till after the mortgages to Flake and the complainant were recorded. M'Cullough then procured Wood to commence a foreclosure on his mortgage on the 30th of December, 1840, by a bill in this court against the mortgagors, Philippon, Flake, the complainant, and the tenants in possession. A decree of sale was made in that suit on the 21st of July, 1841, which directed the surplus after the payment of Wood's debt and costs, to be brought into court. Under this decree, lot 51 Front-street was sold for $24,750 on the 2d of September, 1841, and the master paid into court a surplus of $4,934 57. On the 25th of September, the complainant procured an order of reference to dispose of the surplus. He, as well as Philippon and M'Cullough, appeared before the master on the reference. The complainant proved his own and Flake's mortgages, and claimed that they were the first liens on the surplus. Philippon made a like claim on his mortgage, which he produced and proved. No other claims were made, and on the 30th of October, the master reported that Philippon's mortgage was the first lien. On the 9th of November, 1841, the

surplus was paid over to him. M'Cullough attended with Philippon on the reference, and urged and insisted on the priority of P.'s mortgage.

The complainant has since requested M'Cullough to pay to him the amount due on his and Flake's mortgages, but without effect.

The bill prayed that M'Cullough be ordered to pay to the complainant the amount due to him on those mortgages and upon his decree, or such part of the same as might be just and equitable; and for further or other relief.

J. C. *Smith* and M. S. *Bidwell*, for the defendant, in support of the demurrer.

F. S. *Kinney*, complainant in person.

THE ASSISTANT VICE-CHANCELLOR.—When Halsey and M'Cullough dissolved their co-partnership, on the 31st of May, 1838, M'Cullough took all the assets of the firm, and agreed to pay all the co-partnership debts. The debt to Philippon, for which he held their unrecorded mortgage, was one of the debts which M'Cullough thus assumed to pay. From thenceforth, Halsey became the surety of M'Cullough in reference to that mortgage.

On the same 31st of May, Halsey purchased of M'Cullough his undivided half of the Front-street stores, for a full price; and M'Cullough conveyed the stores to Halsey, with covenants of quiet enjoyment, and warranty, and against all incumbrances, excepting the mortgages to Wood and to Field, subject to which the conveyance was made.

At this stage of the transaction, by force of the agreement on the dissolution of the co-partnership, and without reference to the covenants in the deed to Halsey, M'Cullough was the principal debtor to Philippon, the lands mortgaged were in the place of a surety for his debt, and Halsey, in respect of his personal liability to Philippon, was also a surety for M'Cullough. It is objected, that this agreement is a variation of the terms of the conveyance to Halsey, or rather an addition to those terms,

and void because by parol. To this it may be answered, that it does not as yet appear to have been by parol. But I apprehend that if it did so appear, the objection would be untenable. The equity in question, is no part of the contract of sale which is evidenced by the conveyance. It arises from another and distinct contract, that for the dissolution of the co-partnership; made on the same day, but not necessarily connected, or shown to be connected, with the sale of the real estate. If M'Cullough had not sold to Halsey, this equity would have been equally operative as to Halsey's undivided half of the premises. On M'Cullough's conveying his half to Halsey, (supposing it to have followed the dissolution,) M'Cullough being liable as principal in respect of the assets of the firm, his half in Halsey's hands became a surety for the debt. If the conveyance preceded the dissolution, the same consequence ensued when the agreement for the latter was consummated. The whole operation, as between the immediate parties to it, was to transfer the principal liability from Halsey and the land, to M'Cullough personally; not altering or diminishing the rights of the creditor. This was entirely competent by parol, and the consideration stated was sufficient.

While the relative position of Halsey and M'Cullough and the two stores, was such as I have stated it, Halsey obtained the loans from the complainant, on his mortgages to him and to his client, Flake. The complainant, believing H.'s representation to be true, that the lots were free from incumbrances, except the two first mortgages, (to Wood and to Field,) made the loans without searching the record of mortgages. It afterwards turned out that Philippon's mortgage was recorded in February, 1839.

Here it is urged by the defendant, that this court will not relieve the complainant, because of his indolence and folly, and his careless indifference in omitting to search the records. The consequences of such neglect are already sufficiently penal, in most cases; but I believe it is not yet decided that a man may not place confidence in his neighbor's honesty and truth, without forfeiting rights which he would otherwise acquire in the subject matter. And I cannot hold that the complainant, by

taking Halsey's word in reference to incumbrances, and thereupon making a loan which a search would have broken off, is to lose the benefit of such equities as Halsey had in the premises mortgaged.

The mortgages to Flake and the complainant, transmitted to them the conditional title, both legal and equitable, to the stores in Front-street. They became mortgagees of the equity which the owner of the stores had in respect thereof, to compel M'Cullough to pay off Philippon's mortgage. In this view, it is wholly immaterial whether the complainant knew of that mortgage or not. If he had known of its existence and circumstances, and of the dissolution agreement between the two mortgagors, his rights would have been the same as against M'Cullough.

The cases of *Varick* v. *Briggs*, (6 Paige's R. 323, 331,) and *Kellogg* v. *Wood*, (4 ibid. 578,) are sufficient authorities to show that the equity in these premises to require M'Cullough to discharge the debt to Philippon was vested in the complainant and Flake by way of mortgage, on the execution of the mortgages to them by Halsey.

See also *Jumel* v. *Jumel*, (7 Paige's R. 591;) *Heyer* v. *Heyer*, (ibid. 465,) and *Palmer* v. *Foote*, (ibid. 437.) The two former recognize the principle, and apply it to the converse of the case before me; the primary liability there being imposed upon the land, and the relation of the obligor to the debt having been changed from that of principal, to that of surety in respect of the land.

By the foreclosure and sale in March, 1841, the complainant under his own and Flake's mortgages, became seised absolutely of the two stores, and of all of Halsey's rights and interests therein. As the owner of the premises, he became entitled to all the benefit of the equity which Halsey had as such owner, to require M'Cullough to discharge the mortgage to Philippon.

Although this equity is not a covenant running with the land, yet it attached itself to the land, and passed with the title, to the complainant. *Kellogg* v. *Wood*, (4 Paige's R. 578. 615. 618.)

When the mortgage to Wood was subsequently foreclosed, the title of all the other parties, in the premises included in that mortgage, was cut off. Philippon claimed and received the surplus, by virtue of his mortgage, which the master decided to be a lien prior to the complainant's mortgage.

As between the complainant and M'Cullough, the latter was bound to pay Philippon's mortgage, and that mortgage having been permitted by M'Cullough to interpose and take the surplus which otherwise would have been paid to the complainant; the transaction is the same as if the complainant having mortgaged his land for M'Cullough's debt, had been compelled to pay off the mortgage. He has in effect paid this surplus money as the surety of M'Cullough, and he is entitled to recover it back.

This right is a mere equity, and there is no force in the objection that the complainant has a remedy at law.

It is made a point by the defendant, that the master erred in awarding the surplus to Philippon, and that the complainant should have excepted to his report, instead of filing this bill.

This objection comes with an ill grace from the defendant, who appeared with Philippon and urged his priority before the master. That very circumstance would warrant the complainant in assuming that M'Cullough had absolved Philippon from his agreement not to record the mortgage, and in connection with the allegation that he fraudulently procured Philippon to record it, is sufficient to authorize the court to infer that the agreement if ever valid, had become inoperative from some cause, before the mortgage was recorded. Certainly, there is not enough disclosed in this bill, to enable me to decide that the master erred in regard to the validity of Philippon's claim.

There is another claim of the complainants, which arises upon the covenants of quiet enjoyment and of warranty in M'Cullough's deed to Halsey, and which goes to the undivided half of the surplus money. These covenants run with the land, and were vested in the complainant with the equity of redemption. They are *legal* covenants, and the objection was strenuously pressed, that the remedy upon them must be at law.

This would have been the case unquestionably, if Philippon's mortgage had been foreclosed while the complainant remained in possession, and the complainant had been ousted thereby.  But no such eviction has occurred.  The complainant was turned out by a title paramount to both, but which left to him a surplus in money, not a portion of the land.  He has been evicted from that surplus, by Philippon's mortgage. This is not such a *legal eviction* as will sustain an action at law upon the covenants in the conveyance to Halsey.

In *Waldron* v. *M'Carty*, (3 Johns. R. 471,) the grantee suffered a foreclosure on a prior mortgage against which his covenant of warranty extended, to proceed to a master's sale, and became the purchaser.  He then brought covenant on the warranty, and the court held on demurrer that it would not lie, because there had been no actual ouster by paramount title. Spencer, J., in delivering the opinion of the court, says, " we do not find one case where an action of covenant has been brought on a covenant for quiet enjoyment, in which it is not expressly alleged, that there was an entry and expulsion from the *possession* or some actual disturbance in the possession."

In *Vanderkarr* v. *Vanderkarr*, (11 Johns. 122,) on a covenant of warranty, the declaration alleged as a breach, that the grantor was not seised, &c., and that there *was no such land* as that conveyed.  The court held it insufficient, and decided that in order to maintain the action, the plaintiff must show a *lawful eviction*.  And see 7 Johns. R. 258, *Kent* v. *Welch.*

Under these authorities, a count on the covenants in M'Cullough's deed, setting forth all the material facts stated in this bill in that behalf, would be had on general demurrer.

The circumstances amount to an eviction in equity, but they do not constitute such a disturbance in, or expulsion from, the *possession of the land itself*, as is indispensable to maintain an action at law on the covenants in question.

I concur most heartily in the suggestions of the learned counsel for the defendant, in relation to the impolicy and evil consequences of an undue assumption of jurisdiction by this court. A sufficient portion of the accumulation of business here, devolves upon this branch of the court, to make it reasonably

watchful against any doubtful exercise of equity jurisdiction. But the case before me, is in my judgment a perfectly plain case for equitable relief; one where there is not merely an inadequate remedy at law. There appears to be no remedy at law for the complainant.

A further objection was taken at the hearing that Halsey should have been made a party to the suit. He would have been a *proper* party, without doubt. But I am not satisfied that he is a necessary party. The complainant as the owner of the lands, became a surety for M'Cullough in respect of Philippon's debt, by force of the original assumption of that debt by M'Cullough on the dissolution of the co-partnership. I do not see how that relation of surety in respect of the land, and the equitable right to cast the debt upon M'Cullough personally, can be affected by subsequent offsets against Halsey, or any subsequent transactions unconnected with this affair.

In the case of *Kellogg* v. *Wood, before cited,* neither the representatives of Lard, to whom the bond was given, nor any subsequent intermediate owner of the equity there enforced, were made parties to the suit.

The answer may disclose a case which will require Halsey to be brought into the suit; and the complainant may amend now and make him a party if he is so advised.

The demurrer must be overruled with costs, and the defendant is to answer in the usual time.